CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

June 16, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

Christopher Jose McLean, Jr.,           )
                                        )
                Plaintiff,              )
                                        )
v.                                      )        Civil Action No. 7:25-cv-000337
                                        )
Clay Corbin *et al.*,                   )
                                        )
                Defendants.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Christoper Jose McLean, Jr., formerly incarcerated at the Northwestern Regional Adult Detention Center and proceeding *in forma pauperis*, filed this action under 42 U.S.C. § 1983 against multiple defendants.  McLean's amended complaint, (Dkt. 11), asserts the following claims: (1) on July 19, 2024, Defendants Sergeant Bearer and Officer Kibler strip-searched Plaintiff and Defendant Officer Kibler assaulted Plaintiff while trying to search for contraband; (2) on July 25, 2024, Plaintiff was unreasonably strip-searched and body scanned by unidentified persons; (3) on July 25, 2024, unidentified persons caused Plaintiff's personal property in his cell to be damaged or missing; (4) on or about July 28, 2024, unidentified Northwestern Regional Adult Detention Center (NRADC) personnel did not intervene or respond to a sexual assault of a non-party inmate; (5) on or about August 10, 2024, Defendant Officer Braithwaite kicked a chair into Plaintiff's leg and discharged a can of mace into Plaintiff's cell without providing decontamination; (6) Defendant Officer Athey sent the mother of Plaintiff's child unwanted sexual images and communications; (7) on or about

-1-

April 17, 2025, Defendant Officer Kibler vandalized and stole Plaintiff's personal property; and (8) the NRADC grievance procedure is deficient and unidentified personnel are denying Plaintiff access to the grievance procedure. (Dkt. 11 at 10–12.)

This matter comes before the court on Defendants' motions to dismiss and for summary judgment. (Dkts. 24, 26.) Defendants move for summary judgment based on Plaintiff's failure to exhaust administrative remedies, (Dkt. 25 at 1), and they also moved to dismiss based on the insufficiency of some of Plaintiff's claims, (Dkt. 27 at 5–9.) Plaintiff opposed the motions. (Dkts. 34, 48.) For the reasons that follow, the court will grant the motions and dismiss this action.

## I.    Standard of Review

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). In making this evaluation, the court accepts all well-pled facts as true, but it need not assume the truth of any "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," as these are not well-pled facts. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

## II.    Analysis

The court first addresses the motion to dismiss.  (Dkt. 26.)  Section 1983 liability is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Iqbal*, 556 U.S. at 676 (providing that a § 1983 action must plead that the defendant, through his own individual actions, violated the Constitution). "Liability may be imposed based only on an official's own conduct." *Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014).  When a plaintiff fails to "identify sufficiently the actions or inactions of each particular Defendant that would indicate that each Defendant could be held liable in connection with his claims, [plaintiff's] complaint fails to allege a plausible claim against any named Defendant." *Hinchee v. Williams*, No. 7:25-cv-00028, 2025 WL 2649654, at *3 (W.D. Va. Sep. 15, 2025).

Plaintiff has not stated that any one defendant was personally involved in the events giving rise to Claims 2, 3, 4, or 8, and he has not stated any actions or inactions of Defendants Petit and Morgan other than listing them as Defendants in the case caption.[1]  Therefore, Plaintiff's amended complaint has not stated sufficient factual matter to allow this Court to draw the reasonable inference that any one Defendant had any involvement in or could be liable for the misconduct alleged in Claims 2, 3, 4, and 8 and/or that a plausible claim against

---

[1] Plaintiff's responses to the motions also do not contain any additional specificity as to these Defendants that would support a viable claim.  In his responses, (Dkts. 34 at 1–2, 48 at 2), Plaintiff contends that Defendant Petit as the institutional investigator failed to rectify the claimed situations or investigate them, but Petit's claimed involvement was after-the-fact and not in connection with the underlying violations.  This would not support liability even if the amended complaint was further amended, for "[i]n the prison context, allegations that a defendant-prison administrator simply reviewed or responded to the plaintiff's grievance describing *other* defendants' allegedly unconstitutional conduct typically is not enough to demonstrate the administrator's personal involvement in the underlying constitutional violation." *Jones v. Harrell*, No. 7:21-cv-00541, 2024 WL 1249510, at *13 (W.D. Va. Mar. 22, 2024).  Further, "claims that the defendants failed to investigate his grievances or appeals [] are not cognizable under § 1983." *Hicks v. Kiser*, No. 7:21-cv-00465, 2022 WL 4593099, at *4 (W.D. Va. Sep. 29, 2022).  Similarly, although Plaintiff also complains generally about retaliation and contends that his grievances have been thwarted by such retaliation, he did not identify any individuals as specified retaliators.

Defendants Petit and Morgan has been stated. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974).

The court finds that Claims 6 also fails. Plaintiff's allegations in Claim 6 involve interactions between Defendant Athey and the mother of Plaintiff's child. (Dkt. 11 at 11-12). Plaintiff fails to allege whether and how he was injured in fact by any of Defendant Athey's alleged conduct, or that such injuries are redressable under federal law such that they could support a § 1983 claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (setting forth requirements for Article III standing). Plaintiff also lacks standing to assert a claim of sexual harassment on behalf of another person. Any legally cognizable injury flowing from Defendant Athey's contacts with the mother of Plaintiff's child would be an injury to her. She could assert such a claim, but Plaintiff lacks standing to do so. *See Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007) (finding that the plaintiff lacked standing to assert a claim related to the retaliatory firing of the plaintiff's mother). Plaintiff here failed to allege any facts that would establish his standing to assert Claim 6. Therefore, the court will dismiss Claim 6 as it lacks subject matter jurisdiction over the claim.

As to the remaining Claims (Claims 1, 5, and 7), the court will grant Defendants' motion for summary judgment. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires that inmates exhaust available administrative remedies prior to filing civil actions. *Woodford v. Ngo*, 548 U.S. 81, 81 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). "[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account" because the PLRA's mandatory exhaustion scheme "foreclos[es] judicial discretion." *Ross v. Blake*, 578 U.S. 632, 639 (2016). Further, exhaustion must be completed in accordance with the rules of the institution. *See, e.g.*, *Woodford*, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

Lack of exhaustion is an affirmative defense that must be asserted by a defendant. Once the defendant has made a threshold showing of a failure to exhaust, the burden shifts to the plaintiff to show that such administrative remedies were unavailable. *Washington v. Rounds*, 223 F. Supp. 3d 452, 459 (D. Md. 2016) (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at * 3 (S.D. W. Va. Sep. 12, 2017) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010); *see also Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) ("[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." (citation omitted)). The exception to the rule is when PLRA exhaustion "is intertwined with the merits of a claim that falls under the Seventh Amendment," such as when an inmate alleges that he was retaliated against by a Defendant

destroying his grievances.  *Perttu v. Richards*, 605 U.S. 460, 468 (2025).  Claims 1, 5, and 7 do not involve retaliation claims.

As shown by the affidavit of Assistant Superintendent Major T. Jones, NRADC has an established grievance process (SOP 5.03) explained in the inmate handbook.  (Dkt. 25-1 at ¶¶ 6-13; *id.* Ex. 1.)  Inmates must first complete the informal request process by submitting an inmate request.  (*Id.* ¶ 9.)  Once the inmate request form is answered by staff, the inmate can then request and submit a grievance form; adverse decisions can be appealed.  (*Id.* ¶¶ 11–13.) According to the affidavit of Jones, Plaintiff never filed any grievances during his incarceration related to the acts at issue here.  (*Id.* ¶ 14.)  Because Plaintiff never filed any grievances of relevant incidents, he never exhausted his complaints to the highest level through an appeal either.

Plaintiff did attach some informal request forms to his original complaint, which were also included in his amended complaint. (Dkt. 11 at 6–9.)  Submitting an inmate request form is the first step of the grievance procedure.  The first two request forms relate to issues that are not the subjects of this action (*i.e.,* missing medication and lack of hygiene items).  (*Id.* at 6–7).  The fourth form, dated August 26, 2024, is largely illegible, except for the "action taken" section which says "donated."  (*Id.* at 9).  The third form, (*id.* at 8), does relate to a claim asserted by Plaintiff in this action (specifically Claim 1, which contends that Officer Kibler used excessive force against him) but there is no evidence that Plaintiff ever submitted a grievance, much less an appeal of the grievance, after submitting this inmate request form. Defendants submitted an unrelated grievance that was submitted by Plaintiff, establishing that he was aware of the process and able to use the system.  (Dkt. 37-1 at 5.)   Even if he had

misunderstood the system, his compliance still would not be excused.  Any misunderstanding

by Plaintiff of the requirements would not establish that the system was so opaque as to be

incapable of use.  *See Ross*, 578 U.S. at 643-44; *Graham v. Cnty. of Gloucester*, 668 F. Supp. 2d 734,

741 (E.D. Va. 2009) ("[A] prisoner's claim that the grievance system was unavailable to him

because he lacked full knowledge of the specifics of the grievance process does not excuse or

waive a failure to exhaust administrative remedies."), *aff'd,* 413 F. App'x 660 (4th Cir. 2011).

Plaintiff intimates that he strategically elected not to exhaust to prevent jail officials

from "identifying [his] angle."  (Dkt. 34 at 1.)   He also contends that he did what he could to

grieve and that he took alternative steps to bring attention to the events about which he

complains.  But strict compliance with an institution's grievance procedures is required, and

alternatives to proper exhaustion, such as phone calls made by Plaintiff's family members and

letters to officials or courts, do not suffice.  Procedures that are not compliant with the official

policy, even when claimed to be equivalent in effect, are not enough.  *See, e.g.*, *Beatty v. Goord*,

210 F. Supp. 2d 250, 255 (S.D.N.Y. 2000) (rejecting claim that inmate "effectively" exhausted

by mailing complaint letters to administrators when policy required submission to a designated

Grievance Clerk).  Plaintiff also did not submit any evidence of these alternative approaches

despite being advised that evidence was needed to oppose a summary judgment motion.  (*See*

Dkt. 28 (*Roseboro* notice)).  He presented no affidavits or declarations from himself or from

others.  His submissions opposing the motions were not sworn or even signed.  (Dkts. 34

(unsworn), 48 (unsworn and unsigned).)  Plaintiff's amended complaint was verified, (Dkt. 11

at 4), however, so the court has considered the allegations therein as mandated by *Gowen v.*

*Winfield*, 130 F.4th 162, 175–76 (4th Cir. 2025), but Plaintiff's references to the grievance system are general with no individuals, dates, or specifics identified.

Because Plaintiff previously indicated he lacked all relevant copies, the court directed that Defendants produce to him his entire grievance file, including all informal requests. (Dkt. 44.) They did so, certifying their compliance with the discovery request. (Dkt. 47.) The court also gave Plaintiff a second extension of time to produce any evidence related to the exhaustion issue with a deadline after his release from incarceration, (Dkt. 44), given that he had claimed to have evidence that he could access once released, (Dkt 39 at 2). The court advised that all evidence related to exhaustion must be submitted by April 15, 2026, and that the court could not consider "claims that evidence not presented exists." (Dkt. 44 at 2.) However, to date, the only evidence that Plaintiff has produced related to the exhaustion issue are the initially submitted informal request forms and alternative actions described above. Thus, the court lacks any evidence demonstrating Plaintiff's compliance with exhaustion requirements or, alternately, his inability to comply other than unsupported generalities that he tried to do so.

This is insufficient to carry Plaintiff's burden to establish proper exhaustion or that he was prevented from meeting the exhaustion requirement. An inmate's conclusory assertions that the grievance process was unavailable are insufficient to defeat summary judgment. *See Graham v. Stallard*, No. 7:17-cv-00035, 2020 WL 5778790, at *10 (W.D. Va. Sep. 28, 2020) (rejecting inmate's claim that correctional officers threw away grievances as insufficient to withstand summary judgment because of lack of supporting detail). A plaintiff "cannot simply, in response to probative evidence that no record exists of him ever having submitted a

grievance concerning the issue raised in [the] lawsuit, submit an affidavit saying 'yes I did,' and expect to survive summary judgment, because if that is all it took to defeat evidence of failure to exhaust, then this defense could never be successfully asserted by a Defendant." *Tate v. Cartledge*, No. 9:13-cv-00810, 2014 WL 5592118, at *6 (D.S.C. Nov. 3, 2014); *see also Maclary v. Carroll*, 142 F. App'x 618, 620 (3d Cir. 2005) (holding plaintiff did not raise a genuine issue for trial sufficient to defeat summary judgment where he offered no support for bare assertions that his grievances went unanswered and unprocessed). Accordingly, and because the court cannot consider unexhausted claims, Claims 1, 5, and 7 will be dismissed.

### III. Conclusion and Order

In accordance with the reasoning above, the court **GRANTS** Defendants' motion to dismiss. Defendants Morgan and Petit and Claims 2, 3, 4, 6, and 8 are **DISMISSED** from this action. The court also **GRANTS** Defendants' motion for summary judgment, and **DISMISSES** the remaining claims (Claims 1, 5, and 7) on the basis that Plaintiff failed to exhaust any claims asserted.

The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Plaintiff and to **CLOSE** this case.

**IT IS SO ORDERED.**

**ENTERED** this 16th day of June, 2026.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE